# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

WILLIAM E. ALTON :

    Plaintiff :

v : Civil Action No. WMN-09-1311

MARYLAND DEPT OF PUBLIC SAFETY :
AND CORRECTIONAL SERVICES, *et al.*
    Defendants :

o0o

## **MEMORANDUM**

The case was dismissed based upon the claims raised by Plaintiff in the amended complaint.[1] ECF No. 21 and 22. The case was remanded to this court by the Fourth Circuit Court of Appeals for consideration of the claims raised by Plaintiff in his initial complaint. Defendants filed a Motion for Summary Judgment. ECF No. 47. Plaintiff opposes the motion. ECF No. 52. This matter is ripe for this Court's dispositive review. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set for the below, the Court will grant Defendants' Motion for Summary Judgment.

### **Background**

#### Plaintiff's Allegations

In the initial complaint Plaintiff states that each time he sought to exercise his First Amendment rights he was subjected to retaliatory actions by staff. On June 11, 2008, he was transferred from Eastern Correctional Institution (ECI) as a form of retaliation by correctional officials for his May 24, 2008 filing of an internal investigations complaint against Officer Jeffrey Kessler. ECF No. 1 at p. 5. Plaintiff states the transfer took place less than one month

---

[1] The amended complaint concerned a claim that Plaintiff had been wrongfully deprived of his property. ECF No. 18.

after he filed a complaint in this Court naming Kessler as a Defendant. *See Alton v. Mathis, et al.*, Civil Action AW-07-1499 (D. Md.). In the previously-filed action Plaintiff sought to file criminal charges against Kessler for writing perjured statements and attempting to subject Plaintiff to punitive segregation as well as corporal punishment.[2] ECF No. 1 at p. 5. He states he attempted to establish a pattern of harassment and personal abuse; and offered that ECI was the subject of a class action suit involving Plaintiff and several other prisoners. *See Spivey, et al. v. Maryland Dept of Correction, et al.*, Civil Action L-01-938 (D. Md.).[3] He claims once he arrived at ECI he was subjected to harassment and personal abuse by hostile aggressive officers, some of whom were named in administrative complaints and others who were named in yet another civil action. *See Alton v. Socks, et al.*, Civil Action AW-98-2761 (D. Md.).[4] Plaintiff claims he was swapped with another inmate who had filed internal complaints and he was placed in a housing unit designated for combative or problematic inmates.

Plaintiff, who suffers from paralysis and has limited ambulatory capacity, asserts he was housed far away from activities and services offered at ECI including medical services, religious programs, the law library, and the dining hall. Plaintiff further claims he was placed on commissary spending restrictions, capping the amount he could spend to $35. ECF No. 1 at p. 6. He states he suffered a significant set-back because he was denied immediate access to a work assignment for which he would earn ten days a month in diminution credits, despite the fact he had been infraction free for years.

On November 19, 2008, Plaintiff filed an administrative remedy procedure complaint

---

[2] The referenced case raised allegations that Plaintiff was denied doses of Flexeril (a muscle relaxant) because he was barred from the medical unit when wearing sweat pants. The complaint named 42 Defendants including correctional and medical staff. *Id*.

[3] Plaintiff signed a stipulation of dismissal in this case on June 14, 2004. *See Spivey*, Civ. Action L-01-938 at Docket No. 65.

[4] This civil action named 38 defendants.

2

(ARP) against Officer F. Wilhelm because he denied Plaintiff a shower after returning from a work assignment and because Wilhelm used provocative language. On November 21, 2008, Plaintiff was interviewed by Internal Investigation Unit (IIU) Agent Wills regarding his claim against Kessler. Wills asked Plaintiff if harassment had continued after his transfer from ECI, and Plaintiff stated he was unsure, but still wished to pursue criminal charges against Kessler for perjury and filing a false report. ECF No. 1 at pp. 6 – 7.

On December 15, 2008, Plaintiff was interviewed by Lt. Whiteside about the complaint he filed against Wilhelm. Plaintiff claims Whiteside used threats and intimidation to try to coerce him into dropping the complaint against Wilhelm. Whiteside raised his voice and kicked a chair and a door in an attempt to intimidate him. Plaintiff alleges Whiteside told him he needed to dismiss the complaint because he was leaving for several weeks and didn't have time to investigate the claim. Whiteside then told Plaintiff if he didn't "sign off" on the ARP against Wilhelm, he should not expect Whiteside to help him in the future. ECF No. 1 at p. 7.

On December 20, 2008, after Plaintiff was cleared to leave his work assignment and returned to his housing unit, Wilhelm and Officer Robertson retaliated against him by subjecting him to an unusual and "illegal pat down/ frisk search." Plaintiff claims the search took place absent probable cause, without a supervisor present, and in a secluded area away from most surveillance cameras. Plaintiff states the search was done in an attempt to intimidate and harass him. During the search Wilhelm made references to the ARP plaintiff had filed on November 19, 2008, and asked him why he had filed it. Plaintiff claims Wilhelm repeatedly groped his testicles and pushed his fingers into Plaintiff's rectal area while his pants were still on. Plaintiff claims that Wilhelm retrieved a broken piece of a pair of eyeglasses from his glove and claimed he had found it in Plaintiff's wheelchair. Wilhelm accused Plaintiff of being in possession of a

3

weapon. Plaintiff was handcuffed and placed on administrative segregation status pending a disciplinary adjustment hearing. ECF No. 1 at p. 8.

On January 5, 2011, Plaintiff was given a disciplinary hearing. He claims he was denied his rights to call witnesses and punished with a segregation sentence of 365 days, loss of visits and loss of good conduct credits. He states the warden's office reduced the segregation time to 200 days, but left the other sanctions intact. Plaintiff states that the adjustment proceedings were punitive in nature because the sanctions were unduly harsh and the Warden failed to correct the errors made by the hearing officer. Plaintiff states that the errors included the date of the actual incident being noted as December 24, 2008. ECF No. 1 at p. 9.

Plaintiff alleges that even though he sent out letters and complaints to the Warden's office he never received a response to his request for assistance in filing criminal charges against staff. On February 18, 2009, Plaintiff was interviewed by Sergeant Shaver who refused to review the surveillance tapes for December 18 and 19, 2008, and also refused to interview inmate witnesses. ECf No. 1 at p. 9.

As a result of being placed on administrative segregation, Plaintiff claims he was stripped of all writing materials, personal property, clothing, a typewriter, and a television. He claims he was also denied hygiene items, use of his crutches, and other walking aids, and his winter coat. Plaintiff's property was taken by officers on the 8 to 4 shifit and included Cabwater, Finalburg and Eames. Plaintiff states that during the time his property was being inventoried he was denied the opportunity to get dressed and was threatened with pepper spray. Plaintiff was required to mail some of his legal papers home. ECF No. 1 at pp. 9 – 10.

On February 4, 2009, Plaintiff claims Officer Wilson conducted a second inventory search of his property, collected all "segregation valuables" being stored, and threatened to

destroy them if Plaintiff did not provide an address where they could be mailed. Plaintiff was given 30 days to provide the address. He asked if he could appeal the decision to remove the property, but his request was denied. Plaintiff filed an ARP regarding the incident. Plaintiff claims that Lt. McKenzie told him his property would be held in storage pending the resolution of his ARP, or for 120 to 180 days.

On December 11, 2008, Plaintiff claims he was confronted by Officer Krause who asked Plaintiff what was going on between him and the midnight shift officers. Krause said the officers were claiming that Plaintiff was screaming about getting a shower. Krause told Plaintiff if he did not stop the behavior he would get cell restriction or be moved out of the unit and that if Plaintiff wanted to stay there, writing complaints was not the way to do it. Plaintiff states that other officers warned him that he was being watched by officers in the main surveillance operations center during dietary working hours. Plaintiff claims he was falsely accused of eating extra food and loitering during work hours. ECF No. 1 at p. 7.

On March 9, 2009, Plaintiff states he was let out of his cell to take a shower and after five minutes of showering, the water was turned off by Officer Wilson. Plaintiff asked to be allowed to rinse off the soap, but Wilson denied the request and threatened Plaintiff with pepper spray. Plaintiff claims Wilson approached him with three other officers and ordered Plaintiff to lock into his cell. Plaintiff states he filed a complaint over the incident, but it was dismissed based on the alleged perjured response of Officer McKenzie, the tier officer. ECF No. 1 at p. 10.

On March 16, 2009, Plaintiff claims Officers Beal, Wilson, and Boeman were authorized by Lt. McKenzie to conduct a search of Plaintiff's cell because they suspected he was helping another inmate with legal matters.[5] During the search Plaintiff alleges that his trial transcripts, photos of family members and other legal materials were destroyed or damaged. Plaintiff states

---

[5] During the search Plaintiff was found to be in possession of gambling paraphernalia. ECF No. 47 at Ex. 9.

that his prescribed medication was poured over the documents and photographs by Wilson and Beal who also put handcuffs on Plaintiff extremely tight. Plaintiff also claims that the officers taunted him about being convicted for second-degree assault on a former correctional officer in the Hagerstown region. After Plaintiff's cell was searched, a Notice of Infraction was written and Plaintiff was threatened with transfer to even more restrictive conditions in segregation housing unit 4. ECF No. 1 at p. 11.

On March 25, 2009, Plaintiff was moved to housing unit 4, a segregation area, during the midnight shift. Plaintiff states he was once again stripped of all allowable property including legal papers and property receipts. He claims he was denied access to writing materials, forcing him to rely on supplies he could borrow from other prisoners. Plaintiff states this denial deprived him of meaningful access to courts and prevented him from filing necessary pleadings in a criminal appeal in the Circuit Court for Cecil County and the Maryland Court of Special Appeals. Plaintiff further claims that his classification counselor's refusal to make copies or to respond to legal requests also contributed to depriving him of access to the courts. He states the refusal to provide these materials to him "unnecessarily delayed" his litigation attempts in both Inmate Grievance matters and Petitions for Judicial Review in the Circuit Court for Allegany County. ECF No. 1 at p. 11.

Plaintiff states he is locked down in a cell for 23 to 24 hours a day, depending on whether he is provided a shower. On March 31, 2009, Plaintiff claims that he was transferred to housing unit 3 where "the abuse and retaliation has continued." He states the transfer took place after he filed several complaints about being denied showers, hygiene items, and recreation. While housed in housing unit 3, Plaintff claims he was again denied meaningful access to the courts as he was again required to rely on receiving writing materials from other inmates. In addition, he

6

claims all showers and recreational privileges were cut off.

Plaintiff admits that his legal papers and some hygiene items were returned to him on May 1, 2009, but claims he was not given "appropriate ink pens," writing paper, carbon paper, or his typewriter. *Id*. He maintains that failure to provide these items infringes on his access to courts. He explains that his typewriter is essential for him because of his disability which affects his right arm. Plaintiff also claims he was denied access to the legal library and access to "persons trained in law." *Id*.

On December 19, 2008, Plaintiff alleges Sgt. Shaver retaliated against him by denying him the right to practice his religion by refusing to allow him to take a shower before services. Plaintiff claims the action was discriminatory because others were allowed to shower before services. The ARP Plaintiff filed concerning the incident was dismissed by the Warden because Plaintiff's name had been removed from the religious services pass list. Plaintiff alleges the Warden told the Commissioner of Correction that he had been removed from segregation status, making his ARP complaint moot. ECF No. 1 at p. 13.

On February 18, 2009, Plaintiff asserts that Officer Shaver admitted to Plaintiff that he should not have gotten such a long segregation sentence since the "alleged weapon [was] not really a weapon and is often used by another prisoner to fix or repair broken appliances." ECF No. 1 at p. 12. Shaver also told Plaintiff that he did not have any constitutional rights. *Id*.

On May 10, 2009, the entire segregation unit was denied showers and recreation because the administration locked the unit down after a fist fight broke out. Plaintiff states the lock down was an excuse for officers to entertain themselves, sleep, or indulge in leisure activities. Plaintiff states segregation inmates are locked down three days a week and, while they are supposed to receive showers and recreation during those times, staff find ways to change the rules. ECF No.

1 at p. 13.

On May 14, 2009, Plaintiff alleges that Lt. McKenzie did not start segregation showers for disabled inmates until 3:45 p.m., knowing it would interfere with recreation walks scheduled to take place on the next shift. Plaintiff reminded McKenzie of this fact, but McKenzie responded with apathy. Officer Miller and Sergeant Middleton then denied Plaintiff his recreation walk and shower because Lt. McKenzie said he could only have one or the other. ECF No. 1 at p. 13.

Plaintiff also claims the prison administration is attempting to force him to mail his property home even though he has no funds to mail it. ECF No. 1 at p. 14. Plaintiff claims he is harassed because he helped inmate Timothy Brockngton, who allegedly was beaten by correctional officers McKenzie and Wilson. Plaintiff gave a verbal statement to the IIU investigator on April 2, 2009. Plaintiff further alleges he and his wife were assaulted by several correctional officers who filed false criminal charges charges against him in the Circuit Court for Washington Count. On February 22, 2007, Plaintiff was assaulted, but he was charged with second-degree assault. Plaintiff states he was convicted after two trials by a "bias jury." He states several correctional officers from both incidents are still employed at Western Correctional Institution (WCI) and although the names of the staff involved were submitted to the Commissioner, Plaintiff alleges nothing has been done to protect him from abuse. ECF No. 1 at p. 14.

On April 24, 2009, Plaintiff was scheduled for a hearing in the Circuit Court for Cecil County. On April 21 and 22, 2009, while Plaintiff was preparing for his court trip, correctional staff and Correctional Medical Services (CMS) employees purposely delayed his transport to court by confiscating auxiliary aids and medical equipment. Plaintiff asserts these actions against

8

him were taken because the personnel involved feared Plaintiff was pursuing litigation against them. Plaintiff was asked if he was trying to sue the officers and asked for details involving the Hagerstown incidents when Plaintiff was charged with criminal assault. Plaintiff claims staff confiscated his back brace, hernia binder and crutches. He alleges the confiscation of these items interfered with his ability to participate in recreation while on segregation. ECF No. 1 at p. 15.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Retaliation and Harassment

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *See Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977); *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir.1999) (*en banc*). In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Three elements must be established: 1) Plaintiff engaged in protected conduct; 2) an adverse action was taken against Plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) Plaintiff's protected conduct motivated at least in part the adverse action. *See Thaddeus-X,* 175 F. 3d at 394; *see also McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1979) (Plaintiff must show that retaliation was the actual motivating factor).

In the prison context, Plaintiff must establish that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *See Rizzo v. Dawson*, 778 F.2d 527, 532 & n. 4 (9th Cir. 1985). The preservation of internal order and discipline is a legitimate goal. *Id*. at 532. If Plaintiff establishes a prima facie case, the burden shifts to Defendants to demonstrate that they would have reached the same decision in the absence of Plaintiff's constitutionally protected conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). "In the prison context, we treat [retaliation] claims with skepticism because '[e]very act of discipline by prison

officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996), quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

The alleged retaliatory conduct in the instant case include a transfer from a medium security prison ro a maximum security prison and "exposure to wide spread abuse." ECF No. 52 at p. 7. The allegation is that the transfers were prompted by Plaintiff's filing of ARPs against correctional officers and for his past participation in litigation concerning prison personnel. The thrust of Plaintiff's claim regarding the transfer is his assertion that he was "sent to a prison known for a history of brutality, murder and retaliation by guards he had filed past complaints against." ECF No. 52 at p. 8. Included with Plaintiff's Response in Opposition is a memorandum prepared after an investigation was conducted into Plaintiff's claims of harassment and retaliation. *Id*. at p. 27. The memorandum, written by R.S. Roderick, states in part,

> In your case there seems to be a pattern of claims that surround your wishes to be transferred from the Western Region to the Central Region in the Baltimore Metro area. The fact remains that while you are issued a wheelchair through medical you are not eligible for any move. WCI is the designated facility for someone in your circumstance making transfer impossible.
>
> As to your negative claims regarding legal access, property, classification and the other various submissions; staff appears to be addressing these matters within current governing regulations. The fact that you do not agree with said findings does not mean that the issues were decided upon wrongly. I see very clealy that you are intent on filing matters until some sort of exasperation is reached with our administration which will then secede (sic) to your underlying transfer request. Again, I caution you that the designation of this facility and your medical status will not allow for such a move.

*Id*. Plaintiff subsequently sent an inquiry to his classification counselor asking why promises made to him to be transferred from ECI to the Central or Jessup regions were not kept. *Id.* at p. 28.

A transfer from one prison to another does not, by itself, impinge a constitutional right even if promises were made with regard to the transfer. Other than Plaintiff's repeated assertions that he was transferred from ECI because of retaliatory reasons, there is no evidence supporting such a claim. In fact it appears from the evidence submitted by Plaintiff that he requested the transfer and simply became dissatisfied when he was not transferred to the prison he preferred. There is no basis to conclude that the transfer was retaliatory.

With regard to "widespread abuse," Plaintiff fails to establish a nexus between the way he is treated by correctional staff and the exercise of a protected right. His assertion that he was harassed by Sergeant Kestler, for example, was extensively investigated. ECF No. 47 at Ex. 13. During the course of the investigation Plaintiff admitted to being involved in "horseplay" with another inmate during which Kestler cited Plaintiff because he felt it was escalating. *Id*. at pp. 5 – 6. The investigation concluded that Kestler's actions were within his authority and were in no way excessive. To lend credence to Plaintiff's retaliation claims without a proper foundation for doing so would in essence insulate Plaintiff from any reprimand regardless of circumstances. Simply put, Plaintiff cannot immunize himself from disciplinary measures through his litigiousness.

## Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and

incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Plaintiff alleges his cell was searched based on a suspicion that he was helping other inmates with their legal cases on March 16, 2009. ECF No. 1 at p. 11. The search in question resulted in discovery of gambling paraphernalia in Plaintiff's possession. ECF No. 47 at Ex. 9. Although Plaintiff claims legal papers were confiscated, he admits the papers were returned. Plaintiff, however, insists that his access to courts was still encumbered because he did not have access to "appropriate" ink pens, carbon paper, or a typewriter and because he was denied access to the law library to conduct research on complex legal issues. ECF No. 1 at p. 11.

The only burden on the capacity to access the courts cited by Plaintiff in the Complaint is that the litigation took longer than it should have taken. ECF No. 1, *see also* ECF No. 52 at pp. 12 – 14 (discussion of legal materials being removed without mention of specific injury). Protracting litigation may serve as an inconvenience to all involved, but it is not injurious to Plaintiff's constitutional right to access the courts. Despite the alleged obstacles to Plaintiff's efforts to litigate his claims, he remained able to request extensions of time, thereby preserving any legal rights raised in the pending litigation. Summary judgment shall be granted in favor of

Defendants on this claim.

## Religion claim

Plaintiff claims violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA). ECF No. 52 at p. 7. The standard established by the Act provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a) (2000). "RLUIPA does not give prisoners an unfettered right to religious accommodation. Rather, the statute mandates 'due deference to the experience and expertise of prison and jail administrators.'" *Lovelace v. Lee*, 472 F.3d 174, 210 (4th Cir. 2006) quoting *Cutter v. Wilkinson,* 544 U.S. 709, 723 (2005).

Plaintiff's claim that he was denied the right to practice his religion is based on an alleged refusal to allow him to "cleanse himself" in preparation for Jumah services. ECF No. 1 at p. 13; ECF No. 47 at Ex. 4, p. 1. He claims on December 19, 2008, he was denied a shower before religious passes were called. He claims this denial deprived him of the opportunity to attend services that day. ECF No. 47 at Ex. 4.[6] There are no other allegations concerning a denial of Plaintiff's opportunity to practice his religion. A single instance of denying Plaintiff an opportunity to take a shower is not a burden on his religious practice. There is no indication that staff who denied Plaintiff's shower knew it impacted on his ability to attend a religious service. Plaintiff has failed to establish a First Amendment violation or a violation of the RLUIPA.

---

[6] Plaintiff's ARP regarding the incident was dismissed as moot because he was no longer in the same housing unit and because his name was no longer on the pass list for Sunni services. The central issue of the ARP was the denial of showers on this and another occasion, not the denial of his right to practice his religion. ECF No. 47 at Ex. 4, pp. 1 and 6.

Conditions Claim

Plaintiff asserts he was wrongfully placed on administrative segregation and deprived of normal recreational privileges both on and off of segregation. ECF No. 52 at p. 7. Defendants assert that there is no evidence that Plaintiff was harmed by the conditions alleged. ECF No. 47 at Ex. 2 – 13. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).

"[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.), *cert. denied*, 114 S. Ct. 393 (1993). It is important to note that Plaintiff is not claiming he was denied exercise for long periods of time with resulting consequences or injuries. *See e.g. Mitchell v. Rice*, 954 F. 2d 187, 191 – 92 (4th Cir. 1992) (long term total or near total deprivation of exerecise without penologicial justification violates Eighth Amendment). Indeed, the Complaint does not clearly state when and for how long the alleged deprivation of recreation and showers took place.

Plaintiff states in his Complaint that he filed "additional complaints" about "being denied showers, hygiene items, recreation, etc." on March 31, 2009. ECF No. 1 at p. 11; s*ee also* ECF

No. 52 at p. 7 ("Deprivation of *normal* recreational privileges due to tier concept policy"). He then states that on May 14, 2009, McKenzie "did not start segregation showers for the disabled inmates until 3:45 p.m. knowing it would interfere with scheduled recreation walks." *Id*. at p. 13. Thus, it appears that Plaintiff was not completely deprived of recreation and showers during his confinement to segregation. Defendants are entitled to summary judgment on this claim.

Search and Sexual Assault Claim

Plaintiff claims that during a pat down search he was subjected to sexual assault as well as an unreasonable search in violation of the Fourth Amendment. ECF No. 52 at p. 7. Plaintiff states that during the pat down search Wilhelm made references to a complaint Plaintiff filed on November 19, 2008, repeatedly groped his testicles, and pushed his fingers into Plaintiff's rectum while he pants were still on. ECF No. 1 at p. 8. Wilhelm then retrieved a broken piece of a pair of eyeglasses from Plaintiff's wheelchair and charged him with possession of a weapon. Plaintiff claims the weapon was planted by Wilhelm. *Id*.

First, Plaintiff's Fourth Amendment claim must fail as the protections it offers are not applicable to routine shakedown searches of prison cells. "[S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell . . . accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

With respect to the alleged planting of a weapon, Plaintiff was provided with notice and an opportunity to be heard regarding the charges against him. ECF No. 1 at p. 8. Prisoners are entitled to certain due process protections when the loss of good conduct time is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (*citing Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). These include: (1) advance written notice of the charges against him; (2) a written

16

statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-571. With respect to the quantum of evidence supporting guilt, so long as the disciplinary haring decision is based on "some evidence" it surpasses constitutional muster. *See Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D.Va.1980). The disciplinary decision in Plaintiff's case complies with the due process protections afforded and will remain undisturbed by this Court.

Although Plaintiff claims the adjustment hearing team was biased against him and imposed an excessive punishment, he successfully appealed the sanction to the Warden who reduced it from 365 days of segregation to 200 days. ECF No. 47 at Ex. 5. In the appeal of the adjustment hearing officer's decision, Plaintiff makes no mention of the alleged sexual assault during the pat down search. Plaintiff's claim of improper touching is also refuted by his assertions that he was seated in his wheelchair. ECF No. 1 at p. 8. The Notice of Infraction indicates that Plaintiff was asked to stand up for the search, but indicated he could not do so. The search proceeded with Plaintiff still seated in his wheelchair. ECF No. 47 at Ex. 5, p. 12.

Plaintiff's assertion that the officer inappropriately touched his rectal area during the search is refuted by the record evidence. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary

17

judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (videotape discredited plaintiff's version of the facts). Plaintiff's claim that he was sexually assaulted is unsupported by any credible evidence and appears to have been fabricated for purposes of bolstering his claims of retaliation.

## Conclusion

Plaintiff has failed as the non-moving party to establish that there is a genuine issue for trial. Even viewing the evidence in a light most favorable to Plaintiff, a genuine dispute of material fact regarding any of the numerous constitutional claims raised is not present in the record before this Court. Accordingly, for the reasons stated herein, Defendants' Motion for Summary Judgment will be granted in a separate Order which follows.

/s/

Aug. 15, 2011
Date

William M. Nickerson
United States District Judge